

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00312-CR

_____

JEFFREY LEE MANNS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1213452D

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Jeffrey Lee Manns was previously convicted of aggravated robbery with a deadly weapon—a knife. Several years after his conviction, Appellant filed a pro se postconviction motion under Chapter 64 of the Texas Code of Criminal Procedure seeking DNA testing of two knives, a Gerber-brand knife and a Kobalt-brand knife. The trial court denied the motion, and again acting pro se, Appellant appealed.

In what appears to be a single issue with multiple subparts, Appellant challenges the denial of his Chapter 64 motion. A host of reasons support the trial court's exercise of its discretion to deny the motion. With respect to the Gerber knife, which has never been tested, Appellant does not explain how the absence of his DNA on the knife is so exculpatory that it establishes by a preponderance of the evidence that he would not have been convicted. Further, the Gerber knife was not held in a chain of custody sufficient to establish a reliable test result. With respect to the Kobalt knife, DNA testing is not warranted because there was no issue at trial, and there is not one now, of Appellant's identity as the perpetrator of the offense. Prior testing of the Kobalt knife could not exclude that Appellant's DNA was on the knife's handle. Now, Appellant admits that he held the knife on the night of the offense; with this admission, he validates the accuracy of the prior test and negates any suggestion that retesting will produce a different result. Further, his motion is

fatally deficient because it makes only a conclusory allegation that newer testing techniques provide a reasonable likelihood of results that are more accurate and more probative than the results of the test previously conducted on the knife. Finally, he contends that the Kobalt knife should be tested to prove that it does not hold the victim's DNA, but he makes no contention that material exists to conduct that test, and a Chapter 64 motion may not be used to obtain additional samples of DNA. Accordingly, we affirm.

## II. Factual Background

In 2012, we affirmed Appellant's aggravated robbery conviction. *See Manns v. State*, No. 02-11-00512-CR, 2012 WL 6049099, at *1, *5 (Tex. App.—Fort Worth Dec. 6, 2012, pet. ref'd) (mem. op., not designated for publication).[1] For context, the following is the factual background from our prior opinion:

> Charles Kent, a vehicle repossession agent, was on his way to repossess a vehicle when he observed a 1977 Ford F-150 truck parked in a parking lot with its hood open and a man under the hood on the passenger side. After circling the block to investigate, Kent found the truck in the parking lot with the hood closed and no one around. He parked in the same parking lot to reroute his GPS and work on paperwork.

---

[1]We dismissed for want of jurisdiction Appellant's prior appeals from the denial of a prior motion for DNA testing and a request for appointed counsel. *See Manns v. State*, No. 02-17-00259-CR, 2017 WL 6947903, at *1 (Tex. App.—Fort Worth Oct. 19, 2017, no pet.) (mem. op., not designated for publication) (dismissing appeal from denial of motion for appointment of counsel); *Manns v. State*, No. 02-15-00247-CR, 2015 WL 5893122, at *1 (Tex. App.—Fort Worth Oct. 8, 2015, no pet.) (mem. op., not designated for publication) (dismissing appeal from denial of motion for DNA testing).

The driver's side door of the Ford truck flew open[,] and a man, later identified as [Appellant], jumped out and took off running. Kent drove after [Appellant] and eventually cornered him near a building. Kent, a concealed handgun license holder, pointed his .38 revolver at [Appellant] and told him to "freeze." [Appellant] fled again, running back toward the Ford truck. [Appellant] fell down, and Kent got out of his vehicle, leaving his gun inside. He jumped on top of [Appellant], who struggled to get free. While on top of [Appellant], Kent felt a sharp pain in his stomach and looked down to see that [Appellant] had "stuck" a knife in his stomach. Kent hit [Appellant], who dropped the knife. Kent told [Appellant[ that they should talk about things "like men," and [Appellant] sat up. Kent returned to his truck, got his gun, called police, and detained [Appellant] until police arrived.

When police arrived, they secured Kent's gun and recovered [Appellant's] knife from the parking lot. The responding officers found the Ford truck with the hood ajar, with wires hanging down underneath the driver's side, and with its ignition pried open as if someone had tried to hotwire the truck. [Appellant] first told police that he was trying to get into the truck to sleep but later told them that he intended to hotwire the truck so that he could drive it to go collect a debt and then return the truck.

2012 WL 6049099, at *1.

To clarify the role of the two knives that Appellant seeks to have tested, the knife described in the quoted background is the Kobalt. The DNA test on the Kobalt's handle was introduced at Appellant's trial; it indicated that the handle contained a two-person mixture of DNA and that Appellant could not be excluded as one of the contributors. The Gerber is not mentioned in the quoted background; the owner of the Ford pickup found it on the truck's floorboard the morning after the incident.

4

Again, Appellant seeks retesting of the Kobalt and testing for the first time of the Gerber. Appellant's Chapter 64 motion had two basic themes: (1) the FBI testing methods had been updated since the time of the original testing of the Kobalt, and (2) DNA testing of the Kobalt would show an absence of the victim's and his DNA on its handle and blade—thus negating the possibility that the victim was stabbed with the knife. The motion's most decipherable presentation of this argument is as follows:

> A newer and complete test of the Kobalt and Gerber kni[f]e blades, handles, and inside casings will positively demonstrate an absence of Kent's and [Appellant's] DNA. Thereby, there is a reasonable probability that, if the jury heard probative evidence that Kent's and [Appellant's] DNA [was] not found on the evidence, [Appellant] would not have been found guilty of the aggr[a]vated element of intentionally, knowingly, viciously[,] and savagely stabbing Mr. Kent as was presented to the jury and contested herein. Again, the [s]tatements made by the State are the only evidence that constitutes the charged offense.

The trial court denied Appellant's motion and made numerous findings of fact:

> 1. On September 9, 2010, between 2:00 a.m. and 3:00 a.m., tow truck driver Charles Kent noticed a 1977 Ford F-150 pickup truck parked in a warehouse lot with its hood open near Interstate 30 and Las Vegas Trail.
>
> 2. Mr. Kent saw [Appellant] under the truck's hood on its passenger side.
>
> 3. After circling the block, Mr. Kent re-approached the parked truck whose hood was now closed, but he did not see anyone around the vehicle.
>
> 4. Once Mr. Kent returned to his tow truck, the pickup truck's driver side door suddenly opened.
>
> 5. [Appellant] scrambled out of the truck and took off running.

5

6. Realizing that [Appellant] was stealing the vehicle, Mr. Kent intuitively gave chase in his tow truck.

7. When he caught up to [Appellant], Mr. Kent pointed his gun through his passenger side window and told him to "freeze[."]

8. [Appellant] hastily turned in the opposite direction back towards the parked pickup truck.

9. Mr. Kent left his tow truck to capture [Appellant] but did not bring his gun because he did not think he would need it to defend himself.

10. While straddling [Appellant] and struggling to hold him down, Mr. Kent felt a sharp pain in his stomach.

11. [Appellant] had a knife clenched in his white-knuckled hands[] and was pushing it into him.

12. Mr. Kent punched [Appellant] until he threw the knife about an arm's length away.

13. Mr. Kent eventually calmed [Appellant] down so that he could call the police.

14. When [Appellant] resumed getting anxious, Mr. Kent drew his gun and ordered [Appellant] to stay put until the police arrived.

15. Officer Chris Bolling found both [Appellant] and Mr. Kent at the scene[] and took [Appellant] into custody.

16. Officer Bolling found a blue folding pocket knife – the Kobalt knife – in the open position on the ground close to where [Appellant] had been sitting.

17. Investigating the pickup truck, Officer Bolling saw that the hood was ajar[,] and[] inside its cabin, the ignition had been pried open and cut wires were hanging around the driver's side as if someone had been trying to "hot-wire" the truck to steal it.

18.   Officer Manuel Ramirez testified that it looked like someone was attempting to "hot-wire" the truck to steal it.

19.   Officer Bolling and Officer Ramirez both opined that the knife used can cause serious bodily injury or death.

20.   Shaun Riddle, the truck's owner, testified the truck was operable on the night of the offense[,] and it[s] ignition switch was intact.

21.   Mr. Riddle testified that he had given no one permission to use his truck.

22.   Mr. Riddle testified that it appeared that someone had tried to run a wire from the positive post on his truck's battery to the ignition coil to start it.

23.   Although Mr. Kent's wound initially appeared to be a pinprick or a bruise, it festered to the point where he required a tetanus inoculation and antibiotics.

24.   Orchid Cellmark Laboratory conducted pre[]trial DNA testing on the Kobalt knife at [Appellant's] request.

25.   Using Short Tandem Repeat (STR) testing, the laboratory obtained a two[-]person mixture DNA profile from the knife's handle from which [Appellant] could not be excluded.

26.   The Orchid Cellmark Laboratory's DNA testing results are probative inculpatory evidence that [Appellant] handled the Kobalt knife recovered from the crime scene.

27.   The Orchid Cellmark testing results are probative inculpatory evidence that [Appellant] committed this offense.

28.   [Appellant] makes no credible showing that newer testing techniques, capable of providing more-accurate or more-probative results than the STR testing done in 2011, are available.

29.   There is no reasonable likelihood that any new DNA testing technique would provide a more accurate or probative result.

30.    [Appellant] has failed to meet the requirements for new post[]conviction forensic DNA testing of previously-tested evidence.

31.  Mr. Riddle testified that he found the Gerber knife inside his truck near the pedals on the morning after [Appellant had] tried to steal it.

32.  The Gerber knife remained in Mr. Riddle's possession until he brought it to court with him when he testified.

33.  Mr. Riddle testified that the Gerber knife did not belong to him.

34.  The Gerber knife does not meet the chain of custody requirement for post[]conviction forensic DNA testing because it (1) was not secured in relation to the offense and (2) was not in the State's possession until Mr. Riddle brought it to court when he testified.

35.  [Appellant] testified during the punishment phase that Mr. Kent [had] confronted him while he was trying to steal a truck, that he [had] pulled a knife to get Mr. Kent off him, and that Mr. Kent was stabbed during this confrontation.

36.  [Appellant] admits in this motion that he got into an altercation with Mr. Kent while trying to "unlawfully borrow" Mr. Riddle's truck.

37.    [Appellant] does not meet the identity requirement for post[]conviction forensic DNA testing.

38.  Significant non-DNA evidence establishes that [Appellant] stabbed Charles Kent when confronted during the process of stealing Shaun Riddle's truck.

39.  [Appellant] has not shown by a preponderance of the evidence that new "exculpatory" DNA testing results would establish a reasonable probability of his non-conviction.

40.  [Appellant] has failed to meet the requirements of article 64.03 for post[]conviction forensic DNA testing.  [Record references omitted.]

8

### III. Denial of Appellant's DNA Motion Was Proper

In a single issue with multiple subparts, Appellant challenges the denial of his Chapter 64 motion. We address his arguments after setting forth the standard of review and the law applicable to DNA testing under Chapter 64.

#### A. Standard of Review

We utilize a bifurcated standard when reviewing a trial court's decision disposing of a Chapter 64 motion. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We afford almost total deference to the trial court's determination of historical facts and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues. *Id.*

#### B. Standards to Obtain DNA Testing under Chapter 64 of the Code of Criminal Procedure

To obtain postconviction DNA testing, the movant must meet the requirements of Article 64.03 of the Code of the Criminal Procedure, which provides that

> (a) A convicting court may order forensic DNA testing under this chapter only if:
>
>> (1) the court finds that:
>>
>>> (A) the evidence:
>>>
>>>> (i) still exists and is in a condition making DNA testing possible; and
>>>>
>>>> (ii) has been subjected to a chain of custody sufficient to establish that it has not been

substituted, tampered with, replaced, or altered in any material respect;

(B) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

(C) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

Tex. Code Crim. Proc. Ann. art. 64.03(a).

The motion seeking DNA testing must meet specific statutory requirements. Overall, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material."[2]  *Id.* art. 64.01(a–1). The statute enumerates the following requirements that are relevant to the context of Appellant's motion:

(b) The motion may request forensic DNA testing only of evidence described by Subsection (a–1) that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the [S]tate during the trial of the offense, but:

---

[2]Biological material is defined as "an item that is in possession of the [S]tate and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing."  *See* Tex. Code Crim. Proc. Ann. art. 64.01(a)(1).

(1) was not previously subjected to DNA testing; or

(2) although previously subjected to DNA testing:

> (A) can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test[.]

*Id.* art. 64.01(b). Further, the motion "must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *Id.* art. 64.01(a–1).

## C. Analysis

We will explain in turn why the trial court acted within its discretion to deny Appellant's motion for testing the Gerber and the Kobalt knives.

### 1. The trial court properly denied testing of the Gerber knife.

The trial court did not err by denying Appellant's request to test the Gerber because (1) a test result establishing that Appellant's DNA was not on that knife does not create a greater than 50% chance the jury would not have convicted him in light of other evidence establishing his guilt, and (2) the Gerber was not subject to a chain of custody that would have prevented potential adulteration of any biological material found on it. The Gerber was found in the floorboard of the truck by the truck's owner the morning after the events of the offense. The owner retained possession of the knife until he brought it to Appellant's trial.

11

A specific requirement of Chapter 64 is that "the person would not have been convicted if exculpatory results had been obtained through DNA testing." *See id.* art. 64.03(a)(2)(A). We recently fleshed out Appellant's burden as follows:

> Under Article 64.03, a convicted person is not entitled to DNA testing unless he first shows that there is "greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results." *Ex parte Gutierrez*, 337 S.W.3d 883, 899 (Tex. Crim. App. 2011) (quoting *Prible* [*v. State*], 245 S.W.3d [466,] 467–68 [(Tex. Crim. App. 2008)]); *see also Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim. App. 2005). This burden is met "if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish, by a preponderance of the evidence, that the defendant would not have been convicted." *Gutierrez*, 337 S.W.3d at 899. "A 'favorable' DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.'" *Id.* at 892.

*Copple v. State*, No. 02-19-00120-CR, 2020 WL 101867, at *4 (Tex. App.—Fort Worth Jan. 9, 2020, no pet.) (mem. op., not designated for publication). A movant fails to meet this burden when "the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010); *see Dunning v. State*, 572 S.W.3d 685, 698 (Tex. Crim. App. 2019) (holding that if the exculpatory value of potential test results were weighed against inculpatory evidence, appellant had failed to show probability that he would not have been convicted).

It is unclear what Appellant hopes to prove through testing of the Gerber. His brief states that the evidence of the Gerber's discovery was "fabricated" by the truck owner and the State. Even if we accept that the facts surrounding the Gerber's

12

discovery suggested a fabrication of evidence, we do not understand how the absence of Appellant's DNA impacts the argument that is the basis of his motion, which is that he did not stab the victim. No one contended that he had used the Gerber to stab the victim; indeed, Appellant's brief highlights the victim's statements at trial that he had never seen the Gerber. If we assume Appellant's argument is that the lack of his DNA on the Gerber undermines the evidence that he was ever in the pickup, the evidence of this fact is overwhelming and was not disputed by Appellant at trial. Further, the knife was in the possession of the truck owner from the morning after the offense until trial. Balancing the distinct possibility that the truck owner's handling of the Gerber adulterated Appellant's DNA on the Gerber against Appellant's concession and the undisputed evidence that he was in the truck demonstrates why additional testing would not provide exculpatory evidence undermining the probability of Appellant's conviction. It would not stir the waters enough even to muddy them.

And the possession of the Gerber by the truck owner provides an additional basis for the denial of Appellant's motion. Article 64.03 requires that the article to be tested "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect." *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(ii); *Reed v. State*, 541 S.W.3d 759, 770 (Tex. Crim. App. 2017) (stating that evidence handled by a number of people and stored "commingled in a common repository" cast "doubt on the evidence's integrity").

13

Here, the trial court's findings discussed that the owner had found the Gerber in his truck and had possession of it until Appellant's trial. Based on these facts, the trial court also found that the Gerber did not meet Chapter 64's chain-of-custody requirements because it "(1) was not secured in relation to the offense and (2) was not in the State's possession until [the truck owner] brought it to court when he testified." This is a finding of historical fact to which we pay great deference. Nothing demonstrates an abuse of discretion in the findings regarding the deficient chain of custody for the Gerber.

Many of Appellant's other arguments attack matters that have nothing to do with whether DNA testing of the Gerber was warranted. These include challenges that the Gerber was illegally brought into the courthouse and that it was improperly admitted into evidence. Those contentions may not be considered in a Chapter 64 proceeding, and we have no jurisdiction to address them in this appeal. *See Ford v. State*, No. 02-18-00080-CR, 2018 WL 4627163, at *2 (Tex. App.—Fort Worth Sept. 27, 2018, no pet.) (mem. op., not designated for publication) (stating that "to the extent that Ford's arguments on appeal broadly challenge his conviction on other grounds, those challenges are beyond the scope of a [C]hapter 64 proceeding, and we do not consider them"); *McCain v. State*, No. 02-15-00469-CR, 2016 WL 4491226, at *2 n.5 (Tex. App.— Fort Worth Aug. 16, 2016, no pet.) (mem. op., not designated for publication) ("Appellant's brief raises other issues that are outside the scope of this appeal, including 'prosecutorial misconduct,' 'vindictive/selective prosecution,' hiding

14

or tampering with evidence, and challenges to the indictment made against him in the original case. We decline to address these issues, as we do not have the jurisdiction to do so."); *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd) (same).

## 2. The trial court properly denied DNA testing of the Kobalt knife.

Appellant's request for testing the Kobalt fails to meet almost every showing needed to obtain postconviction DNA testing. To obtain new testing, identity must be in issue. Yet, Appellant concedes that identity was not in issue at trial and is not now an issue; instead, he contends only that he did not commit all the elements of the offense. Indeed, he admits that he held the knife while committing part of the offense; this validates the accuracy of the prior test and undermines any claim that a new test might produce a different result. Also, his motion is fatally conclusory in its allegation that additional DNA testing would produce a different result than that obtained originally. Finally, he also fails to allege that biological material exists to test his theory that the victim's DNA is not on the Kobalt's blade.

To obtain testing under Chapter 64, the movant must establish that "identity was or is an issue in the case" and that a preponderance of the evidence shows "the person would not have been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(C), (2)(A). Appellant has admitted his way out of meeting either requirement.

15

At every step in the process, Appellant has admitted that he was properly identified as the person who was attempting to steal the truck involved in the offense, but he now denies that he committed one element of the offense—that he used or exhibited a deadly weapon in its commission. *See* Tex. Penal Code Ann. § 29.03(a)(2). In other words, he acknowledges every element of the offense and what occurred except for using the Kobalt (the deadly weapon) to attempt to stab the victim. His brief articulates this distinction as follows: "Identity is a major issue in this case but not with the identity of the appellant. The issue of mistaken identity is with the alleged deadly weapon." Specifically, his motion states his knife-free version of events as follows:

> [While Appellant] admittedly attempted to unlawfully borrow the vehicle, . . . a Mr. Charles Kent ("Kent") drove up to the scene [and brandished a handgun.] . . . [Appellant] immediately fled in fear of his life as he had no way of knowing what Kent wanted or planned to do and Kent gave chase. Kent, who[] is over a foot taller and 100 lbs heavier easily dwarfed [Appellant]. In fear and scrambling from the unknown assailant w[ie]lding a firearm giving chase, [Appellant] fell to the ground[,] and Kent jumped atop of him pinning him to the ground.
>
> At that point[,] Kent identified himself as a tow truck driver who only wanted to talk to [Appellant] and see why he was running away. [Appellant] sat up and patiently conversed with Kent without incident. After [Appellant] had told Kent that he did not own the truck[,] Kent called the police[,] and they both awaited for authorities to arrive. [Footnote omitted.]

This version of events does not match Appellant's trial testimony. As the trial court found, "[Appellant] testified during the punishment phase that Mr. Kent confronted him while he was trying to steal a truck, that he pulled a knife to get Mr.

Kent off him, and that Mr. Kent was stabbed during this confrontation." Appellant's brief does not dispute that finding but instead claims that he made the statements because he feared a harsher punishment if he did not accept the State's version of events. And in the same paragraph of his brief where he now contends that his prior sworn testimony was untruthful, Appellant concedes that the prior DNA result was accurate in determining that his DNA might be on the Kobalt's handle: "The appellant has never said he did not have a knife. He did, to use as a tool to attempt to steal the truck. Appellant has never denied trying to steal the truck[,] but the factual evidence is the appellant did not use a knife to stab Kent." His argument is that new DNA testing would "prove there is no way possible the appellant handled the knife in the way Mr[.] Kent testified to," apparently based on his speculation that if he had gripped the knife to stab the victim, he would have left more DNA on the handle than the previous testing revealed. As there are only two knives at issue, and because Appellant contends the Gerber was a plant, the knife that he is referring to must be the Kobalt.

Thus, Appellant wants DNA testing to disprove that he held a knife that he now admits holding; thus, Appellant self-identifies as both the person attempting to steal the truck and the holder of the knife. We have repeatedly held that if identity is not and has never been an issue, DNA testing is not warranted. *See Duran v. State*, No. 02-17-00405-CR, 2018 WL 3075030, at *2 (Tex. App.—Fort Worth June 21, 2018, pet. ref'd) (mem. op., not designated for publication) ("[B]ecause identity was

17

not and is not an issue, the trial court properly denied his [C]hapter 64 motion for DNA testing."); *Diaz v. State*, No. 02-17-00003-CR, 2018 WL 359958, at *3 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op., not designated for publication) ("Diaz's complaint is fatally flawed because Diaz does not raise an issue as to the identity of who he claims would have been the assailant other than himself . . . ."); *Reger*, 222 S.W.3d at 514 ("[Reger's] contention fails to raise an issue as to the identity of the perpetrator of the alleged offense, which is required under the plain meaning of [Chapter 64].").

Admittedly, in some circumstances, overwhelming evidence of identification and the statutory prohibition against relying solely on a party's confession as a bar to DNA testing do not forestall a right to testing; those circumstances are not present in this case. *See Esparza v. State*, 282 S.W.3d 913, 922 (Tex. Crim. App. 2009); *Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007); *Pegues v. State*, 518 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 64.03(b) ("A convicted person who . . . made a confession or similar admission in the case may submit a motion under this chapter, and the convicting court is prohibited from finding that identity was not an issue in the case solely on the basis of that plea, confession, or admission, as applicable."). The cited cases are sexual assault cases, and in their context, their holdings make sense. In some sexual assaults, the absence of the defendant's biological material or the presence of another's excludes the possibility that the defendant committed the crime—no matter

18

what other evidence identified him as the perpetrator or his acknowledgements of culpability. But outside that unique circumstance, it cannot be an abuse of discretion to deny further DNA testing when the trial record, Appellant's statements at trial, his Chapter 64 motion, and his brief all negate any challenge to identity and confirm the accuracy of the prior DNA testing result.

Also, Appellant's motion is deficient in its attempt to allege that there is biological material that "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See* Tex. Code Crim. Proc. Ann. art. 64.01(b)(2)(A). As the Austin Court of Appeals recently noted,

> For retesting, "the convicted person must show that although previously subjected to DNA testing, the evidence can be subjected to testing with newer techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See Padilla v. State*, Nos. 03-12-00299[-CR, 03-12-00300-CR, 03-12-]00301-CR, 2013 WL 3185896, at *5 (Tex. App.—Austin June 20, 2013, pet. ref'd) (mem. op., not designated for publication). "To meet this burden, the convicted person must provide statements of fact in support of his claims; general, conclusory statements are insufficient." *Id.*

*In re Keller*, No. 03-18-00420-CR, 2019 WL 1561817, at *4 (Tex. App.—Austin Apr. 11, 2019, pet. ref'd) (mem. op., not designated for publication). Here, Appellant's motion did allege that "FBI testing methods . . . recently require[d] accredited DNA Labs in the State of Texas to use a minimal 22 loci test. This gives a more accurate and reliable result and presents a greater chance that prior unknown DNA can be properly identified." This information was contained in a letter from a

19

lawyer who had represented Appellant on a prior Chapter 64 motion; Appellant attached the letter to his motion. Though Appellant's motion contains something more than a bare conclusion that a new DNA test would produce a different result, his allegation is still conclusory. The statute's requirement—that there be factual support for the claim that new testing would be more accurate and probative—would be a meaningless formality if that requirement were satisfied with the allegation that someone of unknown qualifications had told the movant that there was a new testing regimen, and based on this change, that must mean that a different result would occur if the item were retested.[3]

Finally, one contention in Appellant's motion is that testing the Kobalt would show an absence of the victim's DNA on the knife blade and thus disprove that he stabbed the victim with that knife. The motion does not allege that there is an existing sample of the victim's DNA that could test this contention. The inventory attached to the State's Article 64.02 notice mentions no such sample.[4] Further, if a sample does not exist, a Chapter 64 motion cannot be used to compel the collection of additional samples. *See Castro v. State*, No. 01-17-00858-CR, 2019 WL 3330969, at

---

[3]Specifically, the trial court found Appellant's motion to be deficient because "[Appellant] makes no credible showing that newer testing techniques, capable of providing more-accurate or more-probative results than the STR testing done in 2011, are available."

[4]Article 64.02(a)(2) requires the State to deliver evidence to the trial court or explain why it cannot be delivered. *See* Tex. Code Crim. Proc. Ann. art. 64.02(a)(2).

20

*2 (Tex. App.—Houston [1st Dist.] July 25, 2019, pet. ref'd) (mem. op., not designated for publication) ("On its face, Chapter 64 provides solely for the testing of evidence that previously was secured by the [S]tate and was in the [S]tate's possession at trial. As a matter of law, Castro cannot compel [the complainant] to submit a DNA sample for comparison post[]conviction." (citation omitted)); *McCain*, 2016 WL 4491226, at *2 ("Appellant has not shown that any evidence exists to test for DNA and, in fact, admits that no such evidence exists. If evidence does not exist, the trial court cannot order DNA testing."). Thus, Appellant's Chapter 64 motion fails because it makes no allegation of an existing sample; the record contains no evidence that a sample exists to conduct a test that might validate Appellant's theory; and if that sample does not exist, a Chapter 64 motion provides no means to obtain it.

Because the trial court acted well within its discretion to deny Appellant's Chapter 64 motion, we overrule Appellant's sole issue.

## IV. Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's order denying Appellant's request for forensic DNA testing.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 26, 2020

21