Jason T. **PEGUES**, Appellant

v.

The **STATE** of Texas, Appellee

**NO. 01–16–00317–CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued March 28, 2017

Jason T. Pegues, pro se.

John F. Healey, Jr., John J. Harrity III, for The State of Texas.

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

## OPINION

Harvey Brown, Justice

Jason Pegues was convicted of aggravated sexual assault in 1995 and sentenced to 50 years' confinement. Twenty years later, he moved for postconviction DNA testing of physical evidence held by the State. The trial court denied his pro se motion. Pegues appeals. The thrust of his argument is that the trial court erred by giving undue weight to his earlier admissions of guilt in analyzing whether he met his burden to obtain postconviction DNA testing.[1] We conclude that the trial court erred by denying his motion and therefore reverse the trial court's order.

## Background

### *Pegues is convicted of sexual assault*

Twenty years ago, a teenager forced his way into a house where a 16–year old girl, Mary,[2] was home alone. He threatened her with a knife and sexually assaulted her before fleeing through the backdoor of the house. During the police investigation, Pegues, a 16–year-old who lived in the neighborhood, gave a statement confessing to the offense. Pegues later moved to suppress his confession, but his motion was denied. His confession was admitted as evidence against him at trial.

There was other evidence of guilt as well. Mary identified Pegues at trial as her attacker. She testified that she used his knife to cut his leg during the assault. There was photographic and testimonial evidence that Pegues had a corresponding wound on his leg. The jury was told that semen had been detected during a sexual-assault exam conducted the same day as the assault but that DNA tests had been "inconclusive." The sexual-assault kit was admitted into evidence. The jury convicted Pegues of aggravated sexual assault, without Pegues testifying.

During the punishment phase of the trial, evidence of two statements of confession by Pegues were presented. First, Pegues admitted on cross-examination that he sexually assaulted Mary. Second, a clinical psychologist, Dr. Michael Cox, who testified that Pegues was a good candidate for rehabilitation through therapy, testified that Pegues had admitted to him that he sexually assaulted Mary. Cox's report referenced the same admission of guilt. The jury assessed punishment at 50 years' confinement.

In his direct appeal, Pegues argued that the trial court erred by denying his motion to suppress his pretrial confession. *See Pegues v. State*, 964 S.W.2d 678 (Tex.

---

1. Pegues makes other arguments tied to how his case was originally prosecuted. We have appellate jurisdiction to review the trial court's recent order denying postconviction DNA testing, but we do not have jurisdiction to entertain collateral attacks on the trial court's original judgment of conviction. *See*

TEX. CODE CRIM. PROC. art. 64.05; *see also, e.g., Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.–Fort Worth 2007, pet. ref'd).

2. We refer to the complainant by a pseudonym, both to protect her privacy and for ease of reading.

App.–Houston [1st Dist.] 1997, pet. ref'd). Relying on what was known as the *DeGarmo* waiver doctrine, we held that Pegues waived any error with regard to the trial court's ruling on his motion to suppress because he admitted guilt during the punishment phase of his trial. *See id.* at 679–80 (relying on *DeGarmo v. State*, 691 S.W.2d 657 (Tex. Crim. App. 1985), *overruled by Jacobson v. State*, 398 S.W.3d 195 (Tex. Crim. App. 2013) ).[3]

### Twenty years later, Pegues moves for DNA testing

In 2016, Pegues filed a pro se motion, under Article 64 of the Code of Criminal Procedure, seeking to have physical evidence from his trial subjected to additional DNA forensic testing.[4] In evaluating Pegues's motion, the trial court considered various affidavits from those involved in the handling and maintenance of the evidence during and after Pegues's conviction. One affidavit was from Courtney Head, a "criminalist specialist/supervisor" at the Forensic Analysis Division of the Houston Forensic Science Center. Head testified that the State is in possession of physical evidence with the same tracking number as the one assigned to Mary's sexual-assault kit. The physical evidence includes a plastic bag containing a piece of gauze with a "reddish brown stain" in the middle and a tube containing another piece of gauze, as well as some documents.[5] According to Head, the testability of the

physical evidence is unknown but "newer testing techniques may be available that provide more accurate results than previous testing . . . ." The trial court denied Pegues's motion for postconviction DNA testing.

The trial court issued findings of fact and conclusions of law. Regarding the physical evidence, the court found that the original DNA testing had been inconclusive, Pegues did not complain during his sexual-assault trial about the presentation of that evidence, Pegues was seeking postconviction DNA testing of the physical evidence, and the State has physical evidence in its possession but does not know whether it contains biological material capable of producing new DNA test results.

The trial court also found that there was ample evidence of guilt, including Pegues's pretrial confession, Pegues's admission of guilt during the punishment phase of trial, Dr. Cox's testimony that Pegues had admitted guilt, Mary's identification of Pegues as her attacker, Mary's testimony about the stab wound to Pegues's leg, and photographic and testimonial evidence that Pegues had a corresponding wound on his leg. The trial court found the evidence of a corresponding leg wound to be particularly determinative in its analysis of Pegues's motion.

The trial court ruled that Pegues "failed to establish by a preponderance of evidence that he would not have been convict-

---

**3.** The *DeGarmo* waiver doctrine was expressly overruled in *Jacobson v. State*, 398 S.W.3d 195 (Tex. Crim. App. 2013), which held that "a defendant who testifies at the punishment stage of trial and admits his guilt does not forfeit his right to complain on appeal about errors occurring during the guilt stage." *Id.* at 196–97.

**4.** Pegues's Article 64 motion reasserted arguments from earlier filings, including that his pretrial confession was admitted in error and that his conviction was subject to challenge

because it was dependent on the since-overruled *DeGarmo* waiver doctrine. Those arguments are outside the scope of an Article 64 motion review. *See Reger*, 222 S.W.3d at 513.

**5.** No other physical evidence remains in the State's possession. *Cf. Ex parte Gutierrez*, 337 S.W.3d 883, 898 (Tex. Crim. App. 2011) (stating that, "if the trial judge finds, as a factual matter, that the evidence no longer exists and its disappearance is not caused by the bad faith of the State, the requested item simply is not available for DNA testing.").

ed if exculpatory results had been obtained through DNA testing." According to the trial court, a reasonable jury could have convicted Pegues on the evidence described above, even without his confession, irrespective of DNA test results. Because the "testing or retesting of other items would still not explain away defendant being stabbed in the leg," DNA test results would not qualify as "exculpatory results" under the trial court's analysis. *See* TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A) (permitting postconviction DNA testing only if, among other requirements, "the convicted person establishes by a preponderance of the evidence that ... the person would not have been convicted if exculpatory results had been obtained through DNA testing"). In other words, according to the trial court, the significant amount of evidence of guilt would outweigh any benefit to Pegues that might result from a DNA test result that excludes him as the source of the DNA.

### Denial of Motion for Article 64 Postconviction DNA Testing

Pegues challenges the denial of his motion for postconviction DNA testing.

### A. Standard of review

■ In our review of the denial of a motion for Article 64 postconviction DNA testing, we afford almost total deference to the trial court's determination of historical-fact issues and application-of-law-to-fact issues that turn on credibility and demeanor, but we review de novo other application-of-law-to-fact issues. *See Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002); *Ex parte Gutierrez*, 337 S.W.3d 883, 894 n.34 (Tex. Crim. App. 2011). The ultimate question of whether a reasonable probability exists that exculpatory DNA tests would have caused appellant to not

be convicted "is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed de novo." *Rivera*, 89 S.W.3d at 59.

### B. Law on Article 64 postconviction DNA testing

■ Article 64 of the Code of Criminal Procedure allows for DNA testing of physical evidence postconviction. TEX. CODE CRIM. PROC. arts. 64.01–.05 The purpose of this DNA–testing mechanism is to allow a convicted person to establish innocence through DNA test results that exclude the person as the perpetrator of the offense. *See Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007). A convicting court may order postconviction DNA testing only if the court finds, among other things, that (1) "identity was or is an issue in the case" and (2) the convicted person has established by a preponderance of the evidence "that the person would not have been convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. art. 64.03(a).

As we explain below, these two findings are based more on an analysis of the circumstances of the offense and the collection of the DNA evidence than a weighing of evidence of guilt.

#### 1. Situations in which statutory requirements for postconviction DNA testing are met

■ Postconviction DNA testing is appropriate if the assailant's identity is an issue in the case and DNA test results would establish the movant's innocence. *Esparza v. State*, 282 S.W.3d 913, 922 (Tex. Crim. App. 2009); *Blacklock*, 235 S.W.3d at 233. Thus, for example, if there is a single assailant and no possibility that another person's DNA would be on the physical evidence besides that assailant's, then DNA test results indicating that the DNA belongs to a third party would estab-

lish the movant's innocence. *See Blacklock*, 235 S.W.3d at 232. In that situation, the movant would be entitled to postconviction DNA testing. *See id.* at 232–33.

▮ The issue is not whether the State presented ample evidence of the defendant's guilt but, instead, whether exculpatory DNA test results—excluding the defendant as the source of the material—would establish, by a preponderance of the evidence, that the defendant was not the assailant and, therefore, would not have been convicted. *See Ex parte Gutierrez*, 337 S.W.3d at 899. It is "inconsequential" to that analysis whether the defendant has pleaded guilty or strong identification evidence was adduced at trial. *Esparza*, 282 S.W.3d at 922.

Consistent with this approach, Article 64.03(b) provides that a defendant's confession or other admission of guilt does not remove identity as an issue in the case. TEX. CODE CRIM. PROC. art. 64.03(b) ("[T]he convicting court is prohibited from finding that identity was not an issue in the case solely on the basis of [a] plea, confession, or admission.").

This approach of analyzing the circumstances of the offense and the significance of the DNA–containing physical evidence—without regard to other indicia of guilt—is seen in *Esparza*. *See* 282 S.W.3d at 913. There, a woman had been sexually assaulted by a man she met in a nightclub. Early in the evening, the man gave her a business card. Later, he offered to give her and her female relative a ride because their vehicle had been towed. While alone with the two women in his car, he pulled over to a secluded location and began physically assaulting them. One woman was able to escape; the other was not, and she was sexually assaulted. Both women

were able to describe the attacker, his car, and the contents of his car with specificity. Their descriptions matched the defendant and his belongings. *Id.* at 916. One of the women still had the business card the attacker had given to her. It had the defendant's name on it. *Id.* The defendant was convicted and sentenced to life imprisonment. *Id.* at 917.

Many years after the defendant was convicted, he moved for DNA testing of material still in the State's possession.[6] His motion was denied, in part, because there was an indication—but no record evidence—that the complainant had sex with another man two days before the attack and, to the extent the other man's DNA might be identified through postconviction testing, it would fail to exclude the defendant as the attacker. *Id.* at 920. Additionally, the other evidence of guilt was overwhelming, considering the women's testimony and the presence of the defendant's business card in one of the women's possession on the night of the assault. This court affirmed. *Id.*

The Court of Criminal Appeals disagreed and reversed. *Id.* at 920–22. First, there was no record evidence that the complainant had sex two days before the attack or any basis for concluding that DNA from that alleged encounter would have invalidated DNA test results. *Id.* Second, even "overwhelming eye-witness identification" and "strong circumstantial evidence" supporting guilt—such as the defendant's business card and the two women's descriptive testimony—are "inconsequential" when assessing whether a convicted person has sufficiently alleged that exculpatory DNA evidence would prove his innocence to satisfy Article 64.03. *Id.* at 922 (relying on *Blacklock*, 235 S.W.3d 231).

6. The contents of a "rape kit" had been analyzed for DNA pretrial, but the test results were inconclusive. *Esparza v. State*, 282 S.W.3d 913, 917 (Tex. Crim. App. 2009).

■ Thus, the issues of whether identity is an issue and DNA test results would be exculpatory are not determined by analyzing whether there is other, overwhelming evidence of guilt. *Esparza*, 282 S.W.3d at 920–22. Instead, the issues are determined by analyzing whether (1) the offense is the type for which DNA test results would indicate the identity of the assailant and (2) the material to be subjected to DNA testing was collected in a manner and from a location that would allow a conclusion that the source of the DNA was the assailant. *See id.*

## 2. Situations in which statutory requirements for postconviction DNA testing are not met

Identity is not an issue in a case if DNA testing could not determine who committed the offense or exculpate the person convicted. *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008). Three examples show the application of this rule.

The first example occurs when a defendant is convicted under party liability for a crime involving multiple criminal actors and biological material collected from the crime scene could have been from any of those criminal actors. *See, e.g., Ex parte Gutierrez*, 337 S.W.3d at 894–95; *Flores v. State*, 491 S.W.3d 6 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd). In that situation, a DNA test result that does not implicate the convicted person fails to undermine his conviction as a party to the offense. *See Ex parte Gutierrez*, 337 S.W.3d at 894–95.

A second example occurs when a defendant does not dispute that he was the assailant and seeks instead to use DNA evidence to establish a theory of self-defense. *See Lyon v. State*, 274 S.W.3d 767, 769 (Tex. App.–San Antonio 2009, pet. ref'd).

A third example occurs when physical evidence was collected from a common area and could have been left by any of a number of people, meaning that DNA test results excluding the movant as the source would not also exclude the movant as the assailant. *See Cate v. State*, 326 S.W.3d 388 (Tex. App.–Amarillo 2010, pet. ref'd).

■ Thus, to determine whether identity is an issue and whether exculpatory DNA test results would, with reasonable probability, establish Pegues's innocence, the focus is on the circumstances of the offense and the significance of the evidence being subjected to DNA testing, not whether there are other indicia of guilt, such as a confession or other physical evidence. *See Ex parte Gutierrez*, 337 S.W.3d at 899.

## C. Pegues met burden for postconviction DNA testing

■ Mary testified that she was sexually assaulted by only one assailant. She was subjected to a sexual-assault exam that same day. The exam detected the presence of semen. Mary also testified that she had never had a sexual encounter before this attack. Thus, the semen collected in the sexual-assault exam belonged to the assailant.

If DNA testing excludes Pegues as the source of the semen, such test results would meet the Article 64.03 standard for exculpatory results to warrant postconviction DNA testing. *See Esparza*, 282 S.W.3d at 920; *Smith v. State*, 165 S.W.3d 361, 364–65 (Tex. Crim. App. 2005) (holding that movant was entitled to postconviction DNA testing in case in which complainant was sexually assaulted by only one man and there was evidence that seminal fluid was obtained during sexual-assault exam). Other evidence of guilt does not override this result. *See Esparza*, 282 S.W.3d at 916–18. Instead, as the Court of Criminal Appeals has held, such evidence

is "inconsequential" to whether Pegues has met his burden under Article 64.03(a)(2)(A) to obtain postconviction DNA testing. *See Esparza*, 282 S.W.3d at 922; *Blacklock*, 235 S.W.3d at 232.[7]

We conclude that the trial court erred to the extent it held that other evidence of guilt prevented Pegues from meeting his burden to obtain postconviction DNA testing. We turn next to whether the trial court's other findings, besides those addressing evidence of guilt, support a conclusion that identity is not an issue or that DNA test results favorable to Pegues would not exonerate him.

## D. Pegues did not otherwise negate identity as an issue through his pleading

 The trial court found in its findings of fact and conclusions of law that Pegues failed to make identity an issue in his pro se Article 64 motion because he "does not allege in his motion that he is not the perpetrator of the offense, nor does he deny assaulting the complainant."

Additionally, according to the trial court, Pegues's "written pleadings reflect that he is not challenging his conviction, rendering the issue of identity in his motion for forensic DNA testing moot."

Pegues's Article 64 motion is silent with regard to whether he committed the sexual assault. He neither admits nor denies it.[8] But Article 64 does not require a movant to include in his motion an express denial of guilt to make identity an issue in the case. Instead, under Article 64.03, identity is an issue if DNA tests that exclude the movant as the source would also exclude him as the assailant, regardless of admissions of guilt. *See Lyon*, 274 S.W.3d at 769 (citing *Blacklock*, 235 S.W.3d at 232–33). As we held above, identity is an issue in this sexual-assault case involving a single assailant and physical evidence that has been identified to include the assailant's semen.

Moreover, and contrary to the trial court's finding, Pegues did challenge his conviction in his Article 64 motion. In his pro se filings, he stated that "the belief is

---

7. The State cites to an unpublished case for the proposition that victim testimony and other evidence substantially linking a postconviction movant to an offense can negate identity as an issue in the case. *See Solomon v. State*, No. 02-13-00593-CR, 2015 WL 601877 (Tex. App.–Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication). We disagree that *Solomon* applies. The issue in *Solomon* was not whether the trial court should authorize postconviction DNA testing under Article 64.03 but, rather, after the testing was authorized and conducted, how the trial court should characterize the results under Article 64.04. *See id.* at *4–5. That is not the issue in this case. Additionally, *Solomon* is an unpublished memorandum opinion and, therefore, has no precedential value. TEX. R. APP. P. 47.7(a). Finally, we note that the case *Solomon* cites in support of its holding is not inconsistent with our analysis here. *See Sanchez v. State*, No. 05-05-00400-CR, 2006 WL 620254 (Tex. App.–Dallas Mar. 14, 2006, pet. ref'd) (mem. op., not designated for publica-

tion) (affirming trial court's ruling, in Article 64.04 case, that DNA test results were "not favorable" to movant because, even though test results identified another source of DNA, there was evidence that complainant had consensual sex with that person days before sexual assault).

For further support of its proposition that strong evidence of guilt affects whether Pegues's motion should be granted, the State quotes from *Cate v. State*, 326 S.W.3d 388, 390 (Tex. App.–Amarillo 2010, pet. ref'd). Like *Solomon*, *Cate* dealt with how the trial court should treat the results of a postconviction DNA test under Article 64.04, not whether the trial court should authorize the testing under Article 64.03.

8. To the extent Pegues was unclear in his motion, he stated explicitly in his objection to the trial court's findings of fact and conclusions of law that DNA testing would prove his innocence and exclude him as the source of the genetic material.

to be false of DNA confirming the petitioner as the perpetrator" and argued that DNA test results that fail to confirm him as the assailant should result in his immediate release from prison. We review pro se pleadings with "patience and liberality." *Perez v. State*, 261 S.W.3d 760, 763 n.2 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd). We do not agree with the trial court that the phrasing of Pegues's motion negated identity as an issue. *Cf. Lyon*, 274 S.W.3d at 769 (holding that identity was not issue because motion did not seek to exclude movant as person who committed offense but, instead, to use DNA evidence to support theory of self-defense to excuse movant's actions). We conclude that the trial court erred to the extent it denied Pegues's motion either because Pegues failed to expressly deny guilt or because Pegues inartfully argued for postconviction relief.

## Conclusion

We reverse the trial court's order denying Pegues's Article 64.03 motion for postconviction DNA testing and remand for entry of an order granting the motion.