

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00034-CR

ALLAN LATOI STORY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 19th District Court
McLennan County, Texas
Trial Court No. 2011-2499-C1

## MEMORANDUM OPINION

This is an appeal from the trial court's January 6, 2020 order denying Allan Latoi

Story's motion for postconviction DNA testing under Chapter 64 of the Code of Criminal

Procedure. We will affirm.

### Factual and Procedural Background

In December 2011, Story was indicted for murder relating to the stabbing death of

Zachary Davis. In December 2013, Story's trial was held, during which the following

evidence was presented.

Joyce Akers testified that she was a longtime friend of Rene Davis, Zachary's sister. Akers was at Rene's apartment with Zachary, Rene, and [Story] on the night of the altercation. She recalled that Rene and [Story] were arguing, when [Story] said[,] "[I]f you keep at it, I'm going to put my hands on you." Zachary responded[,] "[A]s long as I'm here, you're not going to put [your] hands on her." [Story] told Zachary that if he interfered, he would kill him. Akers testified that [Story] then left the room, and when he returned, Zachary told him[,] "[W]hatever you went back there to get or whatever you call yourself doing, you're going to have to use it." [Story] then walked out the back door, and Rene followed as the two continued arguing. Akers testified that [Story] then grabbed Rene and lifted her up by her throat. At that time, Zachary intervened and struck [Story] with his fist, which resulted in a physical altercation between Zachary and [Story]. Akers recalled that, as Zachary and [Story] were punching each other, [Story] fell to the ground and Rene started hitting [Story]. Akers testified that the fighting stopped and [Story] stood up and walked toward the back door, while Zachary walked away from the back porch and into the yard. As [Story] was walking away, he dropped a knife and picked it up. Akers stated [Story] then approached Zachary who fell to the ground on his back. Akers testified [Story] got on top of Zachary and stabbed him several times, while she yelled [for Story to] "please stop stabbing him." After the stabbing, Rene ran into the house and came back outside with a hammer. [Story] stood up and entered the apartment, while Zachary ran away from the apartment. Akers stated that neither Zachary nor Rene had a weapon when they were fighting [Story].

*Story v. State*, No. 13-14-00038-CR, 2015 WL 7352210, at *1 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2015, pet. ref'd) (mem. op., not designated for publication).

Wanda Kendrick testified that she knew Zachary and Rene because she had been in a relationship with their father. Kendrick recalled that she had decided to go over to Rene's apartment on the night of the altercation. When she arrived in the area, Kendrick parked her vehicle and began walking toward the apartment. Kendrick testified that she then saw Zachary run out of the gate from Rene's apartment. Kendrick recalled that Zachary was bleeding profusely and fell. Kendrick testified that as Zachary was lying on

the ground, he was saying "T," which is the name by which she knew Story at the time.

Zachary died about five minutes later.

> Officer Jason Ireland with the Waco Police Department testified that he responded to the scene and observed Zachary on the ground gasping for breath. Zachary died shortly after his arrival. Officer Ireland learned that [Story] was suspected of stabbing Zachary and obtained his cell phone number. He attempted to locate [Story]'s cell phone by determining its GPS location. For three to four hours, Officer Ireland and other law enforcement officials searched for [Story] using "pings" from [Story]'s cell phone. Officer Ireland narrowed [Story]'s location to a residence within four to five blocks of the crime scene. After confirming [Story] was located in the house, an officer with a canine called for him to come out. After two commands from the officer, [Story] exited the residence. Officer Ireland did not observe any physical injuries, and [Story] did not request medical treatment. [Story] was arrested and taken to the county jail.

> . . . .

> Angelika McCallister, a crime scene technician for the Waco Police Department, testified concerning photographs of the crime scene and the parties involved in the altercation. McCallister explained that [Story] had a number of superficial and non-life[-]threatening injuries, but that Rene did not exhibit any injuries.

> Dr. Janice Townsend–Parchman, the Dallas County medical examiner, performed Zachary's autopsy. She testified that Zachary suffered three stab wounds to the: (1) front left shoulder, penetrating 4¾ inches; (2) liver, penetrating 4¾ inches; and (3) right thigh, penetrating 3 inches. Dr. Townsend–Parchman concluded the three stab wounds caused Zachary's death.

*Id.* at *1–2.

Venson Scott, Zachary's and Rene's father, testified that he had let Story borrow a knife about two or three months before Zachary was killed. Scott described the knife as a hunting knife that was carried in a pouch worn on a belt loop; it did not fold like a

pocketknife.  Scott recalled that the blade of the knife was about four or five inches long.

Scott testified that he never got the knife back after letting Story borrow it.

> Rene testified during [Story]'s case-in-chief.  Rene stated that after arguing with [Story], she went outside with Zachary.  [Story] followed them, and they continued to argue.  Rene testified Zachary punched [Story] "because [Story] acted like he was going to choke me."  Rene denied that [Story] picked her up by her throat.  During the altercation between [Story] and Zachary, [Story] ended up on the ground, and she began hitting [Story] with a stick.  Rene estimated that the stick was two to three feet long and less than four inches in diameter.  After she saw [Story] stab Zachary, she went inside the apartment to get a hammer.  Rene was not sure if she hit [Story] with the hammer or not.  Following the altercation, [Story] ran into the apartment and locked the door, while Zachary ran toward the parking lot.

> On cross-examination, Rene testified that she gave a statement to police on the night of Zachary's death, but did not mention the stick or the hammer because she was scared.  Rene acknowledged she visited [Story] in the jail on four occasions following Zachary's death.  She admitted [Story] asked her to marry him during one of the visits and discussed his upcoming trial with her.

*Id.* at *2.

At the charge conference during the guilt-innocence phase, Story requested an instruction on self-defense.  The trial court denied the instruction.  Having been denied his requested self-defense instruction, Story focused in his closing argument on whether the evidence showed that he intended to cause serious bodily injury to Zachary.

The jury found Story guilty of murder and assessed his punishment at life imprisonment.  Story appealed his conviction to this Court, and the appeal was transferred from this Court to the Thirteenth Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas.  *Id.* at *1 n.1 (citing TEX. GOV'T

CODE ANN. § 73.001). In November 2015, the Thirteenth Court of Appeals affirmed Story's conviction. *Id.* at *6.

On August 5, 2019, Story filed a motion for postconviction forensic DNA testing, accompanied by an unsworn declaration, and a request for appointment of counsel under Chapter 64 of the Code of Criminal Procedure. In the motion for forensic DNA testing, Story requested that a knife that had been collected as evidence be tested. Story referenced a report by McCallister that indicates that the knife was found in the kitchen of the house where Story had been located after the altercation at Rene's apartment and that the knife had possible blood stains on it. McCallister's report states that the stains were tested with "TMB" for human blood and that the test yielded positive results. Story maintained in his motion for postconviction forensic DNA testing that the knife did not belong to him and that it had been "planted" by Waco police officers. McCallister's report states that the owner of the residence was asked about the knife and that he said that he had used it two days earlier to cut chicken.

On August 5, 2019, Story also filed a motion to recuse the trial court judge, Judge Ralph Strother, from presiding over Story's motion for postconviction forensic DNA testing. Judge Strother declined to recuse himself and referred the motion to the regional presiding judge. The regional presiding judge assigned Senior Judge Rick Morris to preside over Story's motion to recuse. On September 30, 2019, Judge Morris signed an order denying Story's motion to recuse, stating that "[t]he Court finds that the Motion is deficient and does not comply with the rules."

Thereafter, on January 6, 2020, Judge Strother denied Story's motion for postconviction forensic DNA testing and his request for appointment of counsel. The trial court's order states that the trial court found as follows:

1.    A hearing on this Defendant's Motion is not required[.]

2.    The presence of Defendant is not necessary[.]

3.    The trial court considers affidavits, the record, the State's response, the Clerk's Record, the Reporter's Record, and other forms of relevant and reliable proof in support of or in contravention of the Defendant's motion[.]

4.    This Court finds that identity is not an issue in this case as required by Texas Code of Criminal Procedure 64.03(a)(1)(C).

5.    This Court finds that Movant has failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results are [sic] been obtained through DNA testing, as required by Tex. Code Crim. Proc. 64.03(a)(2).

This appeal ensued.[1]

---

[1]    Story initially filed a notice of appeal from the trial court's September 30, 2019 order denying his recusal motion. At that time, Story already had a pending appeal in this Court from the same underlying trial court cause number. Story's notice of appeal from the trial court's September 30, 2019 order denying his recusal motion was therefore filed in the already pending appeal—No. 10-19-00025-CV. Subsequently, Story filed what we construed as a notice of appeal from the trial court's January 6, 2020 order denying his motion for postconviction forensic DNA testing. Although the notice of appeal was also from the same underlying trial court cause number as the notices of appeal that had been filed in No. 10-19-00025-CV, the notice of appeal from the trial court's January 6, 2020 order denying Story's motion for postconviction forensic DNA testing was filed in a new appellate cause—No. 10-20-00034-CR. We thereafter determined that Story's appeal from the trial court's September 30, 2019 order denying his recusal motion is related to his appeal from the trial court's January 6, 2020 order denying his motion for postconviction forensic DNA testing and not to the appeal in No. 10-19-00025-CV. Accordingly, all the filings associated with Story's appeal from the trial court's September 30, 2019 order denying his recusal motion that were initially filed in No. 10-19-00025-CV have been transferred to No. 10-20-00034-CR.

**Discussion**

Story raises a sole issue with two subparts. First, Story contends that Judge Strother should have been recused from presiding over his motion for postconviction forensic DNA testing. Second, Story contends that the trial court erred in denying his motion for postconviction forensic DNA testing without addressing the merits of the claims. We will address each of these contentions in turn.

**A.     Denial of Motion to Recuse**

We begin with Story's contention that Judge Morris erred in denying his recusal motion. We review an order denying a motion to recuse for an abuse of discretion. *See* TEX. R. CIV. P. 18a(j)(1)(A); *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.); *Thuesen v. Amerisure Ins. Co.*, 487 S.W.3d 291, 305 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

"The procedures for recusal of judges set out in Rule 18a of the Texas Rules of Civil Procedure apply in criminal cases." *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (orig. proceeding). Rule 18a(a) provides that a motion to recuse:

(1)   must be verified;

(2)   must assert one or more of the grounds listed in Rule 18b;

(3)   must not be based solely on the judge's rulings in the case; and

(4)   must state with detail and particularity facts that:

    (A)   are within the affiant's personal knowledge, except that facts may be stated on information and belief if the basis for that belief is specifically stated;

    (B)   would be admissible in evidence; and

(C)   if proven, would be sufficient to justify recusal . . . .

TEX. R. CIV. P. 18a(a).

Here, Story asserted in his recusal motion that he felt like Judge Strother was biased and could not be neutral.  *See id.* R. 18b(b)(1), (2).  Story's claims of bias and partiality were based predominantly on Judge Strother's rulings in the case.  Specifically, Story complained about Judge Strother setting his bond at an "excessive" amount, denying his motion to reduce bond, denying his motion for speedy trial, impliedly overruling his *pro se* objection to proceeding to trial even though he alleged "misconduct" by the State,[2] denying a request to admit certain evidence on his behalf at his trial, denying a self-defense instruction at his trial, and denying his postconviction petition for writ of mandamus for discovery material.  Other than Judge Strother's rulings in the case, Story supported his claims of bias and partiality by alleging only that he "feels" as if Judge Strother helped the prosecutor with a strategy to obtain a conviction against him and that Judge Strother must have engaged in impermissible *ex parte* communications with the prosecutor to do so.  Story based these beliefs on the fact that he was indicted in January 2013 for the offense of failure to register as a sex offender, which the State subsequently moved to dismiss stating as its basis for dismissal that Story was not required to register as a sex offender under Texas law, and the cause was dismissed in June 2013.  Story alleged in his recusal motion that he was allowed to be charged with the

---

[2] Story was represented by appointed counsel at the time he made this objection as well as throughout his trial and direct appeal.

"bogus charge" of failure to register as a sex offender as a tactic to get him to enter into a plea agreement regarding his murder case because the prosecution "knew this case was not murder."

Story's allegations that are not related to his complaints about Judge Strother's rulings in the case are, however, nothing more than mere suspicions and speculation that Judge Strother acted improperly, which is insufficient to require recusal. *See id.* R. 18a(a); *Ex parte Ellis*, 275 S.W.3d 109, 122 (Tex. App.—Austin 2008, no pet.). We are therefore left with Story's complaints about Judge Strother's rulings in the case. The United States Supreme Court has stated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994); *see Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (citing *Liteky*, 510 U.S. at 555, 140 S.Ct. at 1157). Judicial rulings are grounds for appeal, not for recusal. *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157. Furthermore, opinions the judge forms during a trial do not necessitate recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*; *Dow Chem. Co.*, 46 S.W.3d at 240 (quoting *Liteky*, 510 U.S. at 555, 140 S.Ct. at 1157); *Fox v. Alberto*, 455 S.W.3d 659, 666 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We therefore conclude that, on this record, Judge Morris did not err in denying Story's recusal motion.

## B.     Denial of Motion for DNA Testing

We now turn to Story's contention that the trial court erred in denying his motion for postconviction forensic DNA testing without addressing the merits of the claims.

Generally, we review a trial court's decision on a motion for DNA testing under a bifurcated standard of review. *See Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004). We afford almost total deference to the trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We review *de novo* application-of-law-to-fact issues that do not turn on credibility and demeanor. *Id.* In the instant case, the trial court did not conduct a hearing. Therefore, we review the trial court's denial of Story's motion for DNA testing *de novo*. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

Article 64 of the Code of Criminal Procedure allows for postconviction DNA testing of physical evidence. *See* TEX. CODE CRIM. PROC. ANN. arts. 64.01–.05. "The purpose of this DNA-testing mechanism is to allow a convicted person to establish innocence through DNA test results that exclude the person as the perpetrator of the offense." *Pegues v. State*, 518 S.W.3d 529, 533 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007)). A convicting court may order postconviction DNA testing only if the court finds, among other things: (1) "identity was or is an issue in the case" and (2) the convicted person has established by a preponderance of the evidence that "the person would not have been

convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a).

Story first argues here that the trial court erred in concluding that a hearing on his motion for postconviction forensic DNA testing was not required and that his presence was not necessary. But the Court of Criminal Appeals has held, "Nothing in Article 64.03 requires a hearing of any sort concerning the trial court's determination of whether a defendant is entitled to DNA testing." *Rivera*, 89 S.W.3d at 58–59; *Russell v. State*, 170 S.W.3d 732, 733 (Tex. App.—Waco 2005, no pet.) (quoting *Rivera*, 89 S.W.3d at 58–59).

Story also argues that the trial court erred in concluding that identity is not an issue in this case as required by Article 64.03(a)(1)(C). To support his argument, Story references Article 64.03(b), which states:

> A convicted person who pleaded guilty or nolo contendere or, whether before or after conviction, made a confession or similar admission in the case may submit a motion under this chapter, and the convicting court is prohibited from finding that identity was not an issue in the case solely on the basis of that plea, confession, or admission, as applicable.

TEX. CODE CRIM. PROC. ANN. art. 64.03(b). But identity never was nor is an issue in this case. Story initially attempted to argue that he acted in self-defense. A trial court is not required to order DNA testing under circumstances where the defendant admits to being the perpetrator but seeks to establish self-defense. *Peyravi v. State*, 440 S.W.3d 248, 249–50 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see Reger v. State*, 222 S.W.3d 510, 514 (Tex. App.—Fort Worth 2007, pet. ref'd). Story next argued during his trial that the evidence failed to show that he intended to cause serious bodily injury to Zachary. Story still never denied being the perpetrator. Finally, Story admitted in both his motion for

postconviction forensic DNA testing and the accompanying unsworn declaration that he had an altercation with Zachary and Rene that night. Accordingly, we conclude that the trial court did not err in finding that identity is not an issue in this case as required by Article 64.03(a)(1)(C). *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(C).

Story lastly argues that the trial court erred in concluding that he failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing, as required by Article 64.03(a)(2). We disagree. The specific knife that Story wants tested was found at the residence where he was located several hours after the altercation that occurred with Zachary at Rene's apartment. Story argued in his motion for postconviction forensic DNA testing that the knife did not belong to him and was not relevant to the altercation with Zachary. The prosecution must have agreed because that specific knife was never mentioned during the trial of this case, and no knife was ever introduced as evidence. Accordingly, we conclude that the trial court did not err in finding that Story failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing, as required by Article 64.03(a)(2). *See id.* art. 64.03(a)(2).

### Conclusion

In light of the foregoing, Story's sole issue is overruled. We affirm the trial court's January 6, 2020 order denying Story's motion for postconviction DNA testing under Chapter 64 of the Code of Criminal Procedure.

MATT JOHNSON
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed November 9, 2022
Do not publish
[CRPM]

