

# NUMBER 13-22-00003-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS, Appellant,

v.

GUSTAVO LOPEZ MIRELES, Appellee.

**On appeal from the 332nd District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Justice Tijerina**

Appellant the State of Texas appeals the trial court's grant of appellee Gustavo

Lopez Mireles's post-conviction motion for DNA testing.[1] *See* TEX. CODE CRIM. PROC.

---

[1] Mireles was convicted of murder, a first-degree felony and sentenced to life imprisonment. *See* TEX. PENAL CODE ANN. § 19.02.

ANN. arts. 64.01, 64.03; *see also id.* art. 44.01(6) (allowing the State to appeal an order issued pursuant to Chapter 64). By four issues that we have renumbered and reorganized, the State contends that the trial court improperly granted Mireles's motion.[2] We reverse and render.

## I.     APPLICABLE LAW AND STANDARD OF REVIEW

Pursuant to Chapter 64, a defendant may file a post-conviction motion in the convicting court requesting that items that were previously tested for DNA be retested or that DNA testing be performed on items that were not tested at the time of trial. *See id.* arts. 64.01, 64.03. "The purpose of this DNA-testing mechanism is to allow a convicted person to establish innocence through DNA test results that exclude the person as the perpetrator of the offense." *Pegues v. State*, 518 S.W.3d 529, 533 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Blacklock v. State*, 235 S.W.3d 231, 232–33 (Tex. Crim. App. 2007)); *see also* TEX. CODE CRIM. PRO. ANN. art. 64.03(a)(2)(A).

To be entitled to Chapter 64 post-conviction DNA testing, the movant must first show: (1) the items *were not* previously subjected to DNA testing, *see id.* art. 64.01(b)(1); or (2) if the items *were* previously DNA-tested, those items (a) "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test" or (b) the previously tested items were tested "at a laboratory that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission revealed the laboratory engaged in faulty testing

---

[2] On appeal, the State challenges all necessary findings pursuant to Chapter 64. We need not address all the issues because, as further explained below, we find four of the State's issues dispositive. *See* TEX. R. APP. P. 47.1.

2

practices." *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(A). Moreover, in his motion, the defendant must provide "statements of fact" in support of the claims and general, conclusory assertions are insufficient. *Id.* art. 64.01(a-1) ("The motion must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion."); *Swearingen v. State*, 303 S.W.3d 728, 732 (Tex. Crim. App. 2010); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002).

Once the movant satisfies the above-stated predicates, the defendant must show the following: (1) the evidence exists and is in a "condition making DNA testing possible"; (2) the evidence has been kept within a chain of custody establishing that no one has substituted, tampered with, replaced, or altered the items "in any material respect"; (3) identity was or is an issue in the case; and (4) the defendant's request for DNA testing "is not made to unreasonably delay the execution of sentence or administration of justice." *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a); *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). The defendant must also establish, as pertinent here, that the defendant "would not have been convicted if exculpatory results had been obtained through DNA testing" by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). "This means that a convicted person must show a greater than 50% chance that he would not have been convicted if exculpatory results from the requested DNA testing had been available at trial." *Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019) (citing *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017)). Generally, an exculpatory result is one that excludes the convicted person as the donor of the DNA. *Id.* at 655–56 (citing *Reed*, 541 S.W.3d at 774).

We review the trial court's grant or denial of post-conviction DNA testing under a bifurcated standard. *Reed*, 541 S.W.3d at 768; *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We afford almost total deference to the trial court's determination of issues of historical fact and application of the law to fact issues turning on witness credibility and demeanor. *Reed*, 541 S.W.3d at 768–69; *Holberg v. State*, 425 S.W.3d 282, 285 (Tex. Crim. App. 2014). However, we consider "all other application-to-law-to-fact questions" de novo. *Holberg*, 425 S.W.3d at 285. We will sustain the trial court's decision if it is correct under any theory of law applicable to the case. *Evans v. State*, 628 S.W.3d 358, 362–63 (Tex. App.—Fort Worth 2021, no pet.) (citing *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000)).

## II.    ITEMS PREVIOUSLY TESTED CONSISTENT WITH MIRELES'S DNA[3]

---

[3] In his motion for forensic DNA testing, Mireles set out the underlying facts as follows:

On June 21, 2001, the victim, Mary Jane Rebollar, met an acquaintance, Delia Rodriguez at a bar in Donna, Texas. Mr. Mireles was also at the bar that evening, and he and the two women chatted periodically throughout the evening. Ms. Rodriguez left the bar at around 1:00 a.m., and the victim remained at the bar until around closing time at 2:00 am. On June 23, 2001, roughly two days after her outing with Ms. Rodriguez, the victim's body was found slumped in the floorboard of her truck, which had been abandoned in a sugarcane field a few miles south of the bar. The Victim appeared to be in a state of undress, with her top pulled up over her right breast and jeans pulled down on one side, exposing her right leg and buttock. She was missing her right boot, and her purse lay open beside her. Investigators noted numerous stab wounds on the Victim's upper arms, torso, and neck area, a pool of blood beneath her head, strands of hair clutched in her hand, and visible hair strands laying across the right buttock.

In *Mireles v. State*, No. 13-02-706-CR, 2005 WL 1492078, at *1 (Tex. App.—Corpus Christi–Edinburg June 23, 2005, pet. ref'd) (not designated for publication), this Court set out the facts as follows:

On June 23, 2001, Mary Jane Rebollar was found dead in her own car which had been abandoned in a field and set on fire. An autopsy revealed that she died of multiple stab wounds. The ensuing investigation led to the arrest and indictment of Mireles.

Mireles was charged in a three-count indictment: count one charged Mireles with capital murder, count two charged murder, and count three charged arson. Count two (murder) was presented in alternate paragraphs alleging two different manners of causing death, either (in paragraph one) by stabbing the victim with a knife or (in paragraph two) by

By its first issue, the State argues that Mireles failed to establish that retesting the previously tested evidence linking Mireles's DNA to the crime would provide a reasonable likelihood of results that are more probative than the results of the previous test.[4] *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(A).

As a preliminary matter, we note that if items *were* previously DNA tested, Mireles could have prevailed on his motion for retesting by either showing that those previously tested items could have been (a) "subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test" or if (b) the previously tested items were tested "at a laboratory that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission revealed the laboratory engaged in faulty testing practices. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(A). By a sub-issue to its first issue, the State challenges

---

stabbing the victim with a "sharp object to the grand jurors unknown."

Mireles pled not guilty. The trial court granted Mireles's motion for a directed verdict as to count one and the first paragraph of count two, and the State later dismissed count three. The jury was accordingly only charged with the second paragraph of count two, which alleged that Mireles caused Rebollar's death by stabbing her with an unknown object. Mireles was found guilty and the trial court imposed a life sentence.

*Id.*

[4] The State made this argument in the trial court in response to Mireles's supplemental brief filed in the trial court, which the trial court stated it considered. Mireles argues that the State waived this issue because it did not re-urge it at the hearing. However, Mireles had the burden to satisfy the requirements of Chapter 64 in the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03; *see also Ross v. State*, No. 13-22-00159-CR, 2022 WL 17668399, at *4 (Tex. App.—Corpus Christi–Edinburg Dec. 15, 2022, no pet.) (mem. op., not designated for publication) ("To be entitled to post-conviction DNA testing, a convicted person must satisfy the requirements of Chapter 64."). Moreover, at the Chapter 64 hearing, the State argued that "[t]here is no reason to believe that if we were to retest th[e] same [items] today, that the results would be any . . . different." The State further argued that "[t]he Defendant's match is still going to show up with testing. There is no reason to believe that it wouldn't." We conclude that this issue has been preserved. *See* TEX. R. APP. P. 33.1; TEX. CODE CRIM. PROC. ANN. art. 64.03; *see also Ross*, 2022 WL 17668399, at *4.

5

the trial court's finding that items previously subjected to DNA testing were tested during a period identified in the [Texas Forensic Science Commission's] audit as involving faulty testing practices." *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(B)(ii). Those items include, among other things, blood found on the victim's pants, blood found on two spots on the victim's truck, and four pubic hairs found at the crime scene matching Mireles's DNA.

Mireles concedes that there is no evidence to support the trial court's finding that the items previously tested were tested "at a laboratory that ceased conducting DNA testing after an audit by the Texas Forensic Science Commission" that "revealed the laboratory engaged in faulty testing practices . . . and . . . during the period identified in the audit as involving faulty testing practices." *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2)(B)(ii). Specifically, Mireles acknowledges that there is no evidence an audit was conducted by the Texas Forensic Science Commission or that the testing of the evidence in Mireles's case occurred during that period.

Thus, this basis for the trial court's grant of Mireles's motion for DNA testing of the items previously tested on this ground is not supported by the record, and we sustain the State's sub-issue to its first issue. *See* TEX. R. APP. P. 47.1. Accordingly, the only potential grounds for allowing DNA testing of previously tested items would be that the previously DNA tested items "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See* TEX. CODE CRIM. PROC. art. 64.01(b)(2)(A).

Here, the trial court found, among other things, that all items that Mireles requested to be DNA tested were "not previously subjected to DNA testing." However, the evidence presented at trial showed that several items had previously been tested, and Mireles's DNA was found on several items, which connected him to the offense. Those items include State's Exhibit 76, which is the victim's jeans containing one blood stain previously tested[5]; State's Exhibit 84, which is four black pubic hairs found in the victim's purse; and State's Exhibits 81 and 82, which are blood stains on the victim's truck where her body was found. These items and the results of these DNA tests on them were previously admitted at Mireles's trial. Thus, the trial court's finding that these exhibits had not been previously tested is contradicted and not supported by the record. The trial court did not conclude that the previously tested items "can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." *See id.*

Nonetheless, even if the trial court had concluded thusly, as further explained below, the evidence belies such a conclusion. At the Chapter 64 hearing, appellant's expert witness, Vanessa Nelson, the biology program coordinator with the Texas Department of Public Safety, testified that stains on Mireles's pants and shirt matched his DNA. Nelson also testified that DNA tests previously conducted could not exclude Mireles as the contributor of three of the pubic hairs collected from the victim's purse.

---

[5] The evidence at the hearing on Mireles's motion for DNA testing showed that only one blood stain had been discovered on the victim's jeans at the time of trial, and that blood stain matched Mireles's DNA.

7

As acknowledged by Mireles, Nelson testified that the alleles that were originally detected by older less-sensitive DNA tests would still be detected upon retesting with newer more sensitive DNA tests because the same loci (locations on the DNA) would be used. Specifically, when asked if the results of the previously performed DNA tests would yield a different result, Nelson said, "[T]here was a profile for the pants that was consistent with Mr. Mireles . . . . [W]e [would] use the same locations now as we used back then, it's just we use more," locations and "those locations themselves wouldn't change. That would still be consistent with Mr. Mireles." Therefore, the evidence established that because the original tests detected alleles consistent with Mireles's DNA, the more sensitive tests that Mireles is requesting to utilize now would *also* detect Mireles's DNA as the *same* DNA. Nelson further clarified that as to the DNA on the victim's pants, the modern tests' additional sensitivity would merely be able to find that there are additional donors that "couldn't be picked up before." Nelson stated that as to the items previously tested that matched Mireles's DNA, she "would expect that it would be the same." In other words, the previously tested DNA would again match Mireles.

Nelson testified that the DNA on the four previously tested items had a "probability [of] selecting a person at random who could be the source of the DNA profile of approximately 1 in 1.168 trillion for Caucasians, 1 in 301.7 trillion for blacks, and 1 in 147.3 billion for Hispanics." The probability of selecting an unrelated person at random who could be the source of the DNA profile of a second black pubic hair found in the victim's purse was approximately one in 34,230 for Caucasians, one in 181,900 for

8

Blacks, and one in 24,180 for Hispanics.[6] However, these samples did not contain a mix of DNA and only contained DNA from one donor, Mireles.

It is true that at the hearing, Nelson established that new testing techniques would yield more accurate results as to the above-listed previously tested items, in the sense that the newer testing techniques may have a higher power to exclude potential DNA donors and could determine whether additional DNA donors contributed to the items previously tested. *See id.* Nonetheless, Mireles must still show that there is a "reasonable likelihood" that results of retesting previously tested items would prove *more probative* than the results of the previous tests. *See id.* In his affidavit attached to his motion to retest the previously tested samples, Mireles did not allege there is a reasonable likelihood that results of testing previously tested items would prove more probative than the results of the previous tests. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01 (a-1); *see also Manns v. State*, No. 02-19-00312-CR, 2020 WL 1466314, at *8 (Tex. App.—Fort Worth Mar. 26, 2020, no pet.) (mem. op., not designated for publication) ("Appellant's motion is deficient in its attempt to allege that there is biological material that 'can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.'"). Additionally, because he made no such allegation, Mireles failed to explain how there is

---

[6] We note the focus of Mireles's motion was on how the newer tests provide more accurate results. He did not point to any evidence showing that the tests previously used were unreliable or inaccurate. In his motion, Mireles focused on cases of exoneration of defendants when *no* DNA testing had originally been performed at the time of the defendant's trial. Mireles mentioned the previously tested items in passing without discussing them specifically and focused his motion on the items that were not previously tested.

9

a reasonable likelihood that results of testing previously tested items would be more probative than the results of the previous tests.

Given that Mireles's DNA was found in four separate locations at the scene of the murder, it seems improbable that newer, albeit more accurate DNA testing, would now exclude Mireles as a donor on all items. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01 (a-1). While we recognize that such a result is *remotely* possible due to Nelson's testimony that a blood relative could be detected, the reasonable likelihood according to Nelson is that new testing will confirm the results of the old testing, albeit with greater accuracy.[7] *See id.*

Moreover, Mireles could not be excluded as the donor of four pubic hairs found in the victim's purse, which were each found at different degrees of testing sensitivity. Nelson was only questioned regarding one of the pubic hairs; no one testified regarding the other three hairs. However, the trial court granted Mireles's request to retest all four hairs. The State argues that there is no evidence in the record that those three hairs contained biological material suitable for retesting. *See id.* art. 64.03(a)(1) (requiring, among other things that the applicant for post-conviction DNA testing provide evidence that "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing"). We agree with the State. At the hearing, no one stated that these three hairs were suitable for retesting. Furthermore, Nelson testified that the DPS lab could decline to retest any material that "was not stored in some place that's not air-

---

[7] "Chapter 64 does not require us to assume that the results of new testing would prove exculpatory in making the threshold determination, under Article 64.01(b)(2), whether new testing techniques would be more probative than old techniques." *Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008).

conditioned in south Texas," because "the heat and humidity is going to degrade the DNA over time," and that these hairs were not stored in an air-conditioned environment. Thus, there is nothing in the record establishing that these hairs are suitable for DNA testing. *See id.* No other evidence contradicting Nelson's testimony was presented.

Mireles has not shown that new testing of the previously tested items matching his DNA would produce results that are more probative than the original results; thus, under these facts, he is not entitled to DNA retesting on the items that were previously tested and matched his DNA.[8] *See Routier*, 273 S.W.3d at 250 (stating, "[if] new testing will only confirm the results of the old testing, albeit with greater accuracy . . . appellant has not shown the new testing to be more probative"). We sustain the State's first issue pertaining to the items previously tested that matched Mireles's DNA.

### III.   ITEMS NOT PREVIOUSLY TESTED AND ITEMS PREVIOUSLY TESTED NOT LINKED TO MIRELES OR WHERE NO DNA PROFILE WAS FOUND

By its second, third, and fourth issues, the State contends that Mireles failed to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing of items not previously

---

[8] Mireles points to Nelson's testimony that she "suppose[d]" that a more sensitive test could result in a finding that the DNA belonged to a blood relative. However, Nelson stated, "[T]hat's not very . . . likely" and "[W]hat was consistent with him in 2001, I would not expect it to be any different today." The State asked Nelson, "If we were to retest those items today, would that result change?" Nelson said, "It would still be consistent with Mr. Mireles assuming that it's not some kind of relative on there." Nelson clarified that she did not think it was very likely that the DNA would be attributable to a blood relative and did not expect the newer tests to garner a different result. She reiterated, "And with more loci or more locations on the DNA, those statistics would probably go higher than what they are now."

Therefore, Nelson's acknowledgment of a remote possibility does not amount to a reasonable likelihood that the DNA belongs to a blood relative and would exclude Mireles, especially, given that Nelson emphatically denied that the results would be different with the newer albeit more sensitive tests. Moreover, Mireles's own DNA was detected on his own pants and shirt, it is highly unlikely that this DNA belonged to a blood relative, and the record contains no indication that any of Mireles's blood relatives have been a suspect in this case.

11

subjected to DNA testing, items previously tested but not linked to Mireles, and items previously tested where no DNA profile was found.

Given that the pubic hairs and the blood found at the scene of the murder matched Mireles, and we have concluded that the trial court erred by granting retesting of those items, Mireles has not shown that he would be exonerated even if DNA from another donor were found after testing items not previously tested, previously tested but not linked to Mireles, and previously tested where no DNA profile was found. The most favorable result that can occur from such testing, from Mireles's perspective is the discovery of additional donors' DNA on these items. This, however, is not enough to satisfy Chapter 64's exoneration requirement because the presence of another person's DNA at a crime scene, by itself, does not constitute affirmative evidence of a defendant's innocence. *See Hall v. State*, 569 S.W.3d 646, 657–58 (Tex. Crim. App. 2019) ("Evidence that merely shows that someone other than Appellant was also involved in the crime does not exonerate Appellant."). We conclude the trial court erred in finding by a preponderance of the evidence that Mireles would not have been convicted if exculpatory results had been obtained through DNA testing of items not previously subjected to DNA testing, items previously tested but not linked to Mireles, and items previously tested where no DNA profile was found. *See id.; Pegues*, 518 S.W.3d at 533 ("The ultimate question of whether a reasonable probability exists that exculpatory DNA tests would have caused appellant to not be convicted 'is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed de novo.'"); s*ee also Ross*, 2022 WL 17668399, at *4 (explaining that the presence of another person's DNA on the gun

12

would only "muddy the waters"). We sustain the State's second, third, and fourth issues.

## IV. CONCLUSION

We reverse the trial court's judgment and render judgment denying Mireles's request for post-conviction DNA testing.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
12th day of October, 2023.