

# COURT OF APPEALS

# EIGHTH DISTRICT OF TEXAS

# EL PASO, TEXAS

———————————————

No. 08-24-00370-CR

———————————————

Cha-Ka Romain Johnson, Appellant

v.

The State of Texas, Appellee

On Appeal from the 27th District Court
Lampasas County, Texas
Trial Court No. 8127

## MEMORANDUM OPINION

Following a jury trial, Cha-Ka Romain Johnson was convicted in 2008 of capital murder

in the death of Hidi Gower. In 2024, Johnson filed his second post-conviction motion for DNA

testing of the gun used in the shooting. The trial court denied the motion, and this appeal followed. For the following reasons, we affirm the trial court's denial of the motion.[1]

## I. BACKGROUND FACTS

The facts that led to Johnson's conviction are set out at length in *Johnson v. State*, No. 03-08-00448-CR, 2010 WL 2133900 at *1–4, 9–13 (Tex. App.—Austin May 28, 2010, pet. ref'd) (mem. op., not designated for publication). We therefore only provide a brief factual summary as it relates to Johnson's request for DNA testing.

As explained in the Austin Court of Appeals' opinion, on the night of July 4, 2007, Hidi was found in the parking lot of a local VFW, with bullet wounds to her head. *Id.* at *1–2. Hidi was taken to the hospital and died shortly thereafter. *Id*. *3. Law enforcement learned during its investigation that Hidi's husband, Don Gower, had been planning Hidi's murder for several months and had offered to pay John Martinez and Jeremiah Ellison to commit the murders, but they both refused his offers. *Id.* at *1–2. However, Martinez purchased a gun at Don's expense to be used in the murder. *Id*. at *2.

As a motive for the shooting, the State introduced evidence that Don was involved in an on-again/off-again relationship with Regina Edwards, and they planned to move in together after Hidi's murder.[2] *Id.* at *1 & n. 2. During a law enforcement interview, Edwards acknowledged

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] As the Austin Court recognized, Don had previously been married to Hidi, and after divorcing her, he had an affair with Edwards but later remarried Hidi. *Johnson v. State*, No. 03-08-00448-CR, 2010 WL 2133900, at *1 (Tex. App.—Austin May 28, 2010, pet. ref'd) (mem. op., not designated for publication). At trial, "Edwards denied continuing a romantic relationship with Don after he remarried Hidi, but the testimony from other witnesses and various exhibits indicate that they were romantically involved during the months leading up to Hidi's death." *Id.* at *1 & n. 2.

knowing of the plan to kill Hidi but denied committing any acts in furtherance of the plan. *Id*. at *2.

At trial, Martinez, Edwards, and Ellison implicated Johnson as the shooter. *Id.* at *9. According to Martinez, on the night of the murder, he had driven Johnson to the VFW in Martinez's girlfriend's (Mariah Epperson) car, dropped him off near Don's truck, then heard three loud sounds, after which "Johnson returned to the car [and] said, 'She's gone,' and stated that he had shot Hidi three times in the chest and the head." *Id.* at *10. Ellison, who had driven to the VFW earlier that day with Martinez and Johnson to conduct reconnaissance, also testified that Johnson had stated he was "done" and he wanted to talk to Don about getting paid for completing the job. *Id*. Edwards also testified that when she later asked Johnson if he had committed the murder, he told her he "needed the money." *Id.* at *11.

As part of their investigation, the police found a gun wrapped in a towel in the trunk of Epperson's car. *Id.* at * 3. Tests performed on the gun linked the gun to the discharged ammunition used in the crime. *Id.* DNA testing on the gun revealed the presence of a DNA specimen for which Johnson was excluded, and the State acknowledged that there was nothing to link Johnson to the gun. *Johnson v. State*, No. 03-20-00461-CR, 2021 WL 5220351, at *2 (Tex. App.—Austin Nov. 10, 2021, no pet.) (mem. op., not designated for publication). The undisputed evidence at trial demonstrated that although the DNA specimen was from a female contributor, and although the State obtained DNA samples from Johnson and Martinez, the State did not ask Edwards—or anyone else—to provide a DNA sample for comparison purposes, and the DNA specimen remained unidentified.[3]

---

[3] At trial, defense counsel emphasized in closing argument the lack of any evidence connecting Johnson to the gun and the unidentified DNA specimen found on it, thereby raising the possibility that the specimen might have belonged to Edwards, as well as the fact that the State never attempted to determine its source.

The charge informed the jury that Martinez and Ellison were accomplices as a matter of law and that their testimony had to be corroborated in order to be considered. *See Johnson*, 2010 WL 2133900, at \*5 (citing Tex. Code Crim. Proc. art. 38.14) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."). The trial court refused Johnson's request to similarly instruct the jury that Edwards was an accomplice as a matter of law and instead instructed the jury that it was tasked with determining whether Edwards was an accomplice. *Id.*

On appeal from his conviction, Johnson argued the trial court erred by denying his request to instruct the jury that Edwards was an accomplice as a matter of law; the trial court rejected that argument, pointing to testimony that although she knew of the plot to kill Hidi, Edwards did not commit any acts in furtherance of the plan. *Id.* at \*7 (recognizing that "a person is not an accomplice witness simply because he knew of the crime but failed to disclose it or even if he concealed it"; he must have "made some affirmative act in furtherance of the crime"). In addition, Johnson argued that the evidence was insufficient to support his conviction, in part because he believed Edwards should have been deemed an accomplice witness and her testimony could not have been used to corroborate Ellison's and Martinez's testimony. *Id.* \*9–11. The court disagreed, finding that even "assuming that Edwards was an accomplice witness," there was sufficient evidence from non-accomplice witnesses that "tend[ed] to connect Johnson to the crime and corroborate[d] the testimony of Ellison, Martinez, and Edwards."[4] *Id.* at \*13. The court pointed to:

[4] As the court explained, "[w]hen determining whether an accomplice witness's testimony is corroborated, appellate courts disregard the testimony of the accomplice and examine the remaining evidence." *Johnson*, 2010 WL 2133900, at \*11 (citing *Sexton v. State*, 51 S.W.3d 604, 611 (Tex. App.—Tyler 2000, pet. ref'd)). "To sufficiently corroborate an accomplice-witness's testimony, it is not necessary that the corroborating evidence directly connect the defendant to the crime or establish, on its own, the defendant's guilt beyond a reasonable doubt; to the contrary, the evidence need only tend to connect the defendant to the crime." *Id.* (citing *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).

the testimony of non-accomplice witness Fred Mosby, who recalled being with Johnson, Martinez, and Ellison when they drove to the VFW the day of the shooting; the testimony of two witnesses who recalled seeing an individual generally matching Johnson's description wearing a hoodie hiding in the bushes near the VFW after the shooting; the testimony of Epperson, who recalled that after the shooting, she saw a hoodie in Martinez's hotel room and Martinez told her the hoodie was evidence of a crime; and Johnson's own statements to law enforcement admitting that he drove to the VFW with Ellison and Martinez the day of the shooting and accompanied Martinez to the VFW again later that night. *Id.* at *12–13.

## II. JOHNSON'S FIRST MOTION FOR POST-CONVICTION DNA TESTING

In 2020, Johnson filed his first motion for DNA testing and motion for appointment of counsel in the convicting court pursuant to Chapter 64 of the Texas Code of Criminal Procedure. In his motion, he made a broad request for DNA testing of the gun that was allegedly used to commit the murder, along with shell casings recovered as part of law enforcement's investigation. The Austin Court of Appeals affirmed the convicting court's decision, concluding that the gun had already been subjected to DNA testing prior to trial, and the results of the testing, which were introduced in evidence at trial, excluded Johnson as a contributor to the DNA matter that was recovered. *Johnson*, 2021 WL 5220351, at *2. The court concluded that because the original DNA testing had already excluded Johnson as a contributor, further DNA testing of the gun would not lead to any exculpatory evidence. *Id*. at *2–3 (recognizing that exculpatory results "must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction"). The court explained that if the testing results "would not change the probability that the inmate would still have been convicted," then there was no justification for ordering testing. *Id.* (citing *Ex parte Gutierrez*, 337 S.W.3d 883, 891 (Tex. Crim. App. 2011)).

The court also denied Johnson's request for the appointment of counsel, noting that Chapter 64 only requires the convicting court to appoint counsel if, among other requirements, "the court finds reasonable grounds for a motion to be filed." *Id*. at *2 (citing Tex. Code Crim. Proc. art. 64.01(c)). Because the court found that Johnson did not establish the need for DNA testing, he also did not establish "reasonable grounds" for the appointment of counsel. *Id.*

## III. JOHNSON'S CURRENT MOTION FOR POST-CONVICTION DNA TESTING

Johnson filed a second motion for DNA testing in the convicting court on August 19, 2024, seeking further testing of the unidentified touch DNA specimen previously found on the gun used in the commission of the offense. Johnson raised two new grounds for this request. First, he argued that newer DNA testing techniques would provide more accurate and probative results than the results produced in previous tests. Second, he requested that the unidentified DNA specimen be compared to Edwards's DNA, contending that doing so would establish she provided "false testimony" at trial when she denied involvement in the offense and "destroy" her testimony. The convicting court denied that motion, and this appeal, which was transferred to us from the Austin Court of Appeals, followed. For the reasons explained below, and following the Austin Court of Appeals' precedent, we affirm the convicting court's decision.

## IV. APPLICABLE LAW AND STANDARD OF REVIEW

Under Chapter 64 of the Code of Criminal Procedure, "a convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material." Tex. Code Crim. Proc. art. 64.01(a–1). "The motion may request forensic DNA testing only of evidence described by Subsection (a–1) that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense, but: (1) was not previously subjected to DNA testing; or

6

(2) although previously subjected to DNA testing: (A) can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test . . .[.]" [5] Tex. Code Crim. Proc. art. 64.01(b)(1)(2)(A).

A convicted person moving for DNA testing must demonstrate that certain statutory requirements are met. *See id.* art. 64.03 (requirements for forensic DNA testing); *see also Swearingen v. State*, 303 S.W.3d 728, 731 (Tex. Crim. App. 2010) ("Chapter 64 requires multiple threshold criteria to be met before a convicted person is entitled to DNA testing."). To be entitled to testing, Johnson must establish "a reasonable likelihood that the evidence contains biological material suitable for DNA testing" and "identity was or is an issue in the case." Tex. Code Crim. Proc. art. 64.03(a)(1)(B)(1)(2). In addition, Johnson must establish by a "preponderance of the evidence [that he] would not have been convicted if exculpatory results had been obtained through DNA testing," and that the request for the proposed DNA testing is not made to "unreasonably delay the execution of sentence or administration of justice." *Id.* art. 64.03(a)(2)(A)(B). "'Exculpatory results' mean results 'excluding [the convicted person] as the donor' of the DNA material." *Johnson*, 2021 WL 5220351, at *2 (citing *Holberg v. State*, 425 S.W.3d 282, 287 (Tex. Crim. App. 2014)).

Stated otherwise, a convicted person is not entitled to DNA testing under Chapter 64 "unless he first shows that unaltered evidence is available for testing; that identity was an issue in the case; that there is greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results; and that the request is not to delay the execution of the sentence." *Prible v. State*, 245 S.W.3d 466, 467–68 (Tex. Crim. App. 2008). "If, regardless of the

---

[5] Chapter 64 further provides, "[t]he convicting court shall appoint counsel for the convicted person if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent." Tex. Code Crim. Proc. art. 64.01(c). Johnson did not request the appointment of counsel in his motion.

results, retesting would not show by a preponderance of the evidence that the accused would not have been convicted, then there is no reason for the trial court to order DNA retesting." *Id*. at 469–70. Texas courts have consistently held that a movant does not satisfy his burden under Chapter 64 to be entitled to post-conviction DNA testing when "the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen*, 303 S.W.3d at 736.

When reviewing a trial court's decision on a Chapter 64 motion, we defer to the trial court's determination of issues of historical fact and application of law to fact issues that turn on the credibility and demeanor of the witnesses. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005). But when, as here, there is no witness testimony and the "trial record and affidavit of the Appellant are the only sources of information supporting the motion . . . the trial court is in no better position" to resolve the motion than we are, we review the trial court's decision de novo. *Id.*; *see also Martinez v. State*, No. 03-24-00090-CR, 2025 WL 3236286, at *2 (Tex. App.—Austin Nov. 20, 2025, pet. ref'd) (mem. op., not designated for publication) ("When, as here, the trial court decided the motion based solely on the written submissions, we review the issues de novo.").

## V. DISCUSSION

### A. Johnson did not establish that submitting the gun for additional testing using newer DNA testing techniques would lead to more accurate or probative results.

In his current motion, Johnson first contends that although the DNA material found on the gun at issue was "previously subjected to DNA testing . . . [it] can now be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are [more] accurate and probative than the results of the previous test." *See* Tex. Code Crim. Proc. art. 64.01(b)(2)(A). But Johnson has not explained the nature of any such "newer testing techniques" he believes would provide more accurate or probative results. The previously conducted testing failed to produce any

8

DNA material attributable to Johnson, and was therefore already exculpatory in nature. Even if newer, more accurate testing techniques exist now, Johnson has not shown that the results of any such testing would be more *probative* of his guilt or innocence than the original results. *See Routier v. State*, 273 S.W.3d 241, 250 (Tex. Crim. App. 2008) (recognizing that a convicted person must establish that newer testing techniques would not only be more accurate but would be more probative). Accordingly, Johnson has not provided a basis for conducting any additional DNA testing.

### B. Johnson did not establish that he is entitled to have the unidentified DNA specimen compared to Edwards's DNA.

Requesting to have the DNA material from an "unidentified woman" found on the gun compared to Edwards's DNA, Johnson argues that if it is determined to belong to Edwards, her trial testimony that she was not involved in the plan to kill Hidi would prove to be false. On appeal, he further contends that because the DNA specimen found on the gun was never linked to anyone, the identity of Hidi's killer was still unknown and her killer was still "at large." However, Johnson has not cited any authority, nor are we aware of any, that would allow a convicted person to require the State to compare a DNA sample to a specific person or persons. To the contrary, Chapter 64 appears to only provide for the results of post-conviction DNA testing to be compared to DNA profiles in existing databases. Specifically, Article 64.035 provides, "on completion of the testing under Article 64.03, the convicting court shall order any unidentified DNA profile to be compared with the DNA profiles in: (1) the DNA database established by the Federal Bureau of Investigation; and (2) the DNA database maintained by the Department of Public Safety." Tex. Code Crim. Proc. art. 64.035. Here, although the record does not reflect that the unidentified DNA profile was

9

submitted to any such databases prior to trial, that is not what Johnson requested. His only request in the trial court was to have the unidentified DNA profile be compared to that of Edwards.[6]

Johnson does not appear to be making this request as a means of identifying Edwards as the shooter, but rather to negate her testimony that she was not involved in planning the murder. But one of the statutory requirements for establishing entitlement to post-conviction DNA testing "relates to the issue of identity." *Prible*, 245 S.W.3d at 470. "Therefore, if DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirement [of Article 64.03] has not been met." *Id*.; *see also Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009) (recognizing same). We nevertheless recognize, as Johnson points out, that if Edwards's DNA matches the DNA specimen on the gun, it would be relevant to the issue of whether Edwards was an accomplice in the murder as a matter of law, and in turn, the State would have been required to present evidence to corroborate her testimony. However, as explained above, the Austin Court of Appeals has already determined that even if Edwards had been deemed an accomplice, her testimony, as well as that of Martinez and Ellison, was sufficiently corroborated by other non-accomplice witnesses who testified at trial. *Johnson*, 2010 WL 2133900, at *11–13. Accordingly, having Edwards deemed an accomplice through DNA testing would not have changed the outcome of Johnson's case.

In addition, even if we were to construe Johnson's motion as seeking DNA testing on the unidentified DNA specimen for the purpose of identifying Edwards as the shooter and as exonerating him, this argument would also fail. In general, even when the presence of a third party's DNA may tend to be exonerating, the convicted person's burden [under Chapter 64 of

---

[6] The only other female identified in the group of individuals involved, even tangentially, in the events surrounding Hidi's death was Mariah Epperson, Martinez's girlfriend. Johnson is not seeking a comparison of her DNA to the unidentified DNA specimen.

10

establishing a reasonable probability that he would not have been convicted if the DNA results had been available] will not be satisfied 'if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing.'" *See Hall v. State*, 569 S.W.3d 646, 656–57 (Tex. Crim. App. 2019) (citing *Swearingen*, 303 S.W.3d at 736); *Whitaker v. State*, 160 S.W.3d 5, 9 (Tex. Crim. App. 2004) ("Regardless of whose blood is on the rifle, other evidence at trial established Whitaker's guilt, including his statement that he had killed the victim.")); *see also Wright v. State*, No. 02-25-00001-CR, 2025 WL 2458623, at *3 (Tex. App.—Fort Worth Aug. 26, 2025, no pet.) (mem. op., not designated for publication) (citing *Prible* 245 S.W.3d at 470) (recognizing that the "[d]iscovery of another person's DNA is not exculpatory when other sufficient evidence supports the conviction.); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (en banc) (recognizing that "[t]he presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence"). But in some circumstances, such as when the evidence demonstrates that an offense was committed by a "lone assailant," the presence of a third-party's DNA can be "strongly exonerating" such that the defendant's burden may be met despite the existence of other inculpatory evidence. *Hall*, 569 S.W.3d at 656–57.

Here, the State did not rely solely on a "lone assailant" theory at trial. Instead, the jury was instructed that it could find Johnson guilty under a "law of parties" theory.[7] Under this theory, which is codified in Articles 17.01 and 17.02 of the Texas Code of Criminal Procedure, "[a] person is criminally responsible as a party to an offense if the offense [was] committed by his own

---

[7] The jury was instructed as follows: "A person is responsible as a party to the offense if the offense is committed by his own conduct, by the conduct of another for which he is responsible, or by both" and that "[a] person is responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute . . . a party to the offense."

11

conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Pen. Code § 7.01 (a); *see also Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996) (en banc) (recognizing that "under the law of parties, the State is able to enlarge a defendant's criminal responsibility to acts in which he may not be the principal actor"); *State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013) (holding that "liability as a party is an available legal theory if it is supported by the evidence"). Thus, "[e]ach party to an offense may be charged with commission of the offense," and "[a]ll traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."[8] Tex. Penal Code § 7.01(b).

In addition, § 7.02 of the Code provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; [or] (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . ."[9] *Id.* at § 7.02 (a)(1)(2).

Because the State relied in part on a "law of parties" theory in prosecuting Johnson, i.e., that he was part of a larger conspiracy to kill Hidi, which Johnson himself contends included Edwards, the fact that the unidentified DNA sample found on the murder weapon may have

---

[8] The indictment alleged that Johnson committed capital murder by "intentionally or knowingly cause the death of . . . . Hidi Lynn Gower, by shooting [her] with a firearm, for remuneration or the promise of remuneration from Donald Dean Gower," and did not plead the law of the parties. However, it is well-settled that the law of parties need not be pled in the indictment. *Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002) (en banc).

[9] Article 7.03 further provides that "[i]n a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission, and it is no defense . . . that the person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution." Tex. Penal Code § 7.03(2).

belonged to Edwards (or another third party), without more, would not automatically exonerate Johnson. Stated otherwise, because numerous individuals were involved in the conspiracy and may have handled the gun at various points before and after the murder, the presence of another individual's DNA on the gun does not negate Johnson's conviction as a party to the offense. *See Hernandez v. State*, No. 13-20-00357-CR, 2022 WL 324040, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 3, 2022, pet. ref'd) (mem. op., not designated for publication) (recognizing that when a person is convicted under a party liability theory for a crime involving multiple criminal actors, his identity as the principal actor is not at issue, therefore, the fact that DNA testing on biological materials found at a crime scene did not implicate him and may have instead implicated the other actors to the offense "does not undermine his conviction as a party to the offense") (citing *Ex parte Gutierrez*, 337 S.W.3d 883, 894–95 (Tex. Crim. App. 2011); *Pegues v. State*, 518 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Flores v. State*, 491 S.W.3d 6, 10 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd)).

Finally, because Johnson was not prosecuted as the "lone assailant" in committing the crime, we may consider whether "other substantial evidence" supported the jury's verdict. *See Ex parte Gutierrez*, 337 S.W.3d at 894 (where defendant was tried under a "law of parties" theory, rather than as a "lone assailant," court would consider whether other substantial evidence supported the jury's verdict of guilt independent of the results of requested DNA testing under Chapter 64). The State presented substantial evidence from which the jury could have found that Johnson committed capital murder, as either the shooter or as a party to the offense, independent of the existence of the unidentified DNA specimen found on the gun. *See Johnson*, 2010 WL 2133900, at *1–3, 9–13. Therefore, even if subsequent testing revealed that the DNA specimen found on the gun matched Edwards's DNA—as Johnson speculates it would—this would not

necessarily lead to a reasonable probability that the jury would have acquitted Johnson for Hidi's murder. *See Hall*, 569 S.W.3d at 659 (concluding that defendant did not show by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained from the testing he was requesting, where other substantial evidence supported his conviction).

## VI. CONCLUSION

Because we conclude that Johnson has not met his burden of establishing his entitlement to DNA testing under Chapter 64, the trial court did not abuse its discretion in denying his motion.[10]

We affirm the trial court's judgment.

LISA J. SOTO, Justice

June 10, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

[10] In his brief on appeal, Johnson also raises an issue relating to whether his statements to law enforcement after the shooting were properly admitted at trial, contending he was not provided his *Miranda* rights prior to making the statements. But Chapter 64 only permits a convicted person to move for post-conviction DNA testing, and an appeal is only authorized from an order relating to any such motion. *See* Tex. Code Crim. Proc. art. 64.05 (providing that "[a]n appeal under this chapter is to a court of appeals in the same manner as an appeal of any other criminal matter"). We therefore do not address that issue, nor do we opine on whether Johnson may raise any such issues in a separate post-conviction proceeding.